GRAPE CREEK COAL CO. et al. v. FARMERS' LOAN & TRUST CO.

(Circuit Court of Appeals, Seventh Circuit.   May 31, 1894.)

No. 148.

1. PRACTICE—ASSIGNMENT OF ERROR.
Under the eleventh rule of the circuit court of appeals for the seventh circuit (1 C. C. A. xiv., 47 Fed. vi.), requiring the error urged to be set out separately and particularly, an assignment of error cannot be good if it is necessary to look beyond its terms to the brief for a specific statement of the question to be presented.

2. FORECLOSURE—AMOUNT UNPAID BUT NOT DUE.
Upon foreclosure of a mortgage for nonpayment of interest, when the principal is not due, and is not, by the terms of the mortgage, to become due upon default in payment of interest, it is both proper and necessary for the court to find the amount of principal unpaid, and decree its payment out of the proceeds when the property is to be sold as an entirety.

3. SAME—WHERE PRINCIPAL NOT DUE—REDEMPTION.
A mortgage securing an issue of bonds provided—First, that if the interest should be in arrear for six months, or if the principal should not be paid at maturity, or if a stipulated payment to a sinking fund should not be made, the trustee should take possession, manage the property, pay the interest in default, and coupons maturing from time to time, and apply the remaining income upon the principal of the bonds; second, that after six months' default in payment of principal or interest the trustee should sell the property as an entirety, and apply the proceeds to the payment of principal and interest, "whether the principal is then due or not;" and, third, that in case of the trustee's taking possession, or proceeding to sell, if the mortgagor, before the bonds became due, and before sale, should pay all arrears of interest, with costs, etc., the proceedings should be discontinued by the trustee, and the property restored to the mortgagor. *Held*, upon a bill to foreclose for default in payment of interest, that a power to decree the whole debt due could not be inferred from the foregoing provisions, and though it was proper to direct payment of the whole debt from the proceeds of the property, when sold as an entirety, the mortgagor should be permitted by the decree to redeem before sale, upon payment of the overdue interest and costs only.

4. SAME—HARMFUL ERROR.
The provisions of the mortgage permitting the mortgagor to stay proceedings by paying the overdue interest does not render harmless the error in a decree adjudging the whole debt due, since, until modified in some lawful way, such decree is conclusive for every purpose of the amount due.

5. SAME—SALE PENDING APPEAL.
The fact that a sale had actually been made pursuant to a decree erroneous in adjudging the whole debt due, should not prevent its reversal; the error being substantial, and the appellate court not being in a position to determine the bona fides of the sale.

6. FORECLOSURE—COST—AMOUNT NOT FIXED.
It is no objection to a decree for foreclosure that it leaves uncertain the amount of costs, counsel fees, etc., to be paid in order to redeem before sale; it being common practice to leave such amounts unfixed, and it being in the power of any party to move to have them fixed.

7. MORTGAGE—LIEN UPON AFTER-ACQUIRED PROPERTY.
Courts of equity extend the lien of a mortgage to after-acquired property upon the theory that, though ineffective as a conveyance, it operates as an executory agreement attaching to the property when acquired. It seems, therefore, that a mortgage, purporting to convey all after-

acquired lands in V. county, but containing covenants for further conveyance and assurance of property afterwards acquired for the business of the mortgagor, would cover the latter only.

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

Suit by the Farmers' Loan & Trust Company against the Grape Creek Coal Company, the Grape Creek Coal & Coke Company, Mason M. Wright, and John B. Brown. Complainant obtained a decree. Defendants appeal.

This appeal is from a decree of foreclosure in favor of the Farmers' Loan & Trust Company, appellee, against the Grape Creek Coal Company, Grape Creek Coal & Coke Company, Mason M. Wright, and John B. Brown, appellants, foreclosing a mortgage executed by the first-named company to secure the payment of a series of 500 bonds, each for $1,000. The other appellants are judgment creditors of the mortgagor, who recovered their respective judgments pending the foreclosure suit. The first bill of complaint for foreclosure was filed December 17, 1891. A second bill was filed April 11, 1892. The two suits were consolidated by order of court April 14th. On May 23, 1892, the first bill was dismissed by the complainant, and the case proceeded to decree April 19, 1893, on the second bill, which, on July 7, 1892, had been amended to include certain after-acquired real estate. The mortgage or trust deed bore date April 1, 1886, and contained the following, with other, conditions: "First. That if the interest on any of the bonds so issued shall not be paid by the party of the first part when the same shall become due, and if such interest remain in arrears for six months after demand at the place where the same is payable, or if the principal of said bonds, or any of them, shall not be paid at their maturity, or in case of default for six months in the payment of whatever may be due on the sinking fund hereinafter provided for, then it shall be lawful for the party of the second part, or its successor in trust for the time being, and it shall be the duty of such trustee, upon the request in writing of the holders of not less than one-half of the then outstanding bonds of the issue hereby secured, to enter forthwith, demand, take, and maintain possession of, all and singular, the estate and premises hereby conveyed, and as the attorney in fact or agent of the said party of the first part, by itself and agents or substitutes, duly constituted, have, use, manage, operate, and enjoy the same, and" (after paying expenses of management) "shall apply the remaining income and revenue arising from the use of said mortgaged property, and coming to its hands, to the payment of the interest in default, and maturing from time to time, satisfying the said coupons in the order of their several' maturities, and thereafter apply the residue upon the principal of the then outstanding bonds. Second. And upon the further trust that if a six-months default shall occur in the payment of either principal or interest of any of the bonds hereby secured, after such actual demand, as aforesaid, then it shall be lawful for said party of the second part, or said trustee for the time being to cause, and upon the written request of the holders of a majority in amount of said bonds then outstanding, it shall, with or without entry, as aforesaid, cause, all and singular, the said premises, appurtenances, equipments, and property of every description, hereby conveyed, to be sold as an entirety, at public auction, to the highest bidder, * * * and on such sale said party of the second part, or the trustee for the time being, shall make, execute, acknowledge, and deliver unto the purchaser or purchasers thereof a good and sufficient deed, in fee simple, conveying the property so sold * * * and after deducting from the proceeds of sale the costs and expenses thereof, and a reasonable compensation to said trustee and its attorneys and agents for services in connection therewith, shall apply so much of the proceeds as may be necessary to the ratable repayment of principal and then-accrued interest of all the said bonds, whether the said principal is then due or not. * * * Third. In case of any such taking possession or proceeding to sell the

mortgaged premises for default of payment of interest or sinking fund, if the said party of the first part, before the said bonds shall become due, and before such sale shall be made, shall pay and satisfy all interest then in arrears on all such outstanding bonds, and shall also pay and discharge all costs, expenses, and disbursements and reasonable compensation incurred by reason of such default or possession, then, upon evidence thereof to his satisfaction, the said party of the second part shall thereupon discontinue such proceeding, and restore possession of the mortgaged premises to the party of the first part, to be thereafter held subject to these presents, in like manner as if such default or entry had not occurred. Fourth. The said party of the first part expressly covenants and agrees that it will, on demand, from time to time, hereafter, execute, acknowledge, and deliver unto the said party of the second part any and all such further and other conveyances and assurances as may be necessary and proper to fully convey to and vest in the party of the second part, or the trustee for the time being, all such future-acquired ground, estate, equipments, and property as it may hereafter, from time to time, purchase for use in the working and carrying on of its said mines. And the said party of the first part doth still further agree that it will, in case of any default in the payment by it either of the principal or interest of any of its bonds hereby secured, forthwith, upon demand of the party of the second part, or the trustee for the time being, surrender the full and peaceable possession of, all and singular, the premises hereby conveyed, or intended to be conveyed, including all the real and personal property by it acquired subsequent to the date of these presents for use in connection with its said mines. * * * Seventh. It is further agreed that beginning April first, A. D. eighteen hundred and ninety-one, and annually thereafter, the said party of the first part shall and will set apart the sum of twenty thousand dollars as a sinking fund to be used and applied in the payment of said bonds. * * * Eighth. It is further agreed that, when any of the lands hereby conveyed shall no longer be available for mining purposes, they may be sold and conveyed in the discretion of the parties of the first and second part, both parties uniting in any conveyance to be made," and such sale may be either of the lands, reserving all mines underneath the surface of the ground, or with such mines as the parties hereto shall deem proper: and the proceeds of said sale shall be reinvested in coal lands, and brought under this mortgage, or be added to the sinking fund provided for in the previous section, and applied as therein directed."

The court found and decreed the lien of the mortgage to be superior to any other lien in favor of any party to the cause; that default had been made in the payment of interest due, entitling the plaintiff to a sale of the mortgaged property and premises, including the after-acquired lands described, "unless the defendant mortgagor shall pay the amount of the entire bonded indebtedness secured by the mortgage, with all costs and expenses of the suit, at a short day to be fixed by the court"; that there were secured by the lien of the mortgage the following amounts of bonds and coupons outstanding and past due, with 6 per centum interest thereon after maturity, to wit, $14,760 for coupons due October 1, 1891, the same amounts, respectively, for coupons due April 1, 1892, October 1, 1892, April 1, 1893, and the sum of $492,000 for the principal of the bonds, aggregating the sum of $555,349.93 due for the principal and interest, and interest upon the unpaid coupons to the date of the decree. It was further ordered and decreed "that unless the parties defendant, or some of them, shall, on or before the expiration of twenty days from the entry of this decree, pay the plaintiff the following sums, namely: First, a sufficient sum of money to pay the costs of the plaintiff in this cause as they shall be taxed, and its compensation as trustee, with its counsel fees and other expenses and disbursements, as the same may be fixed by this court; and, secondly, the entire sum due for principal and interest, and interest on unpaid coupons up to the date of this decree, as hereinbefore fixed and determined, with interest thereon from the date hereof,—then the said mortgaged premises and property shall be sold as hereinafter directed." A sale under the decree was made September 22, 1893, to Joseph J. Asch, P. J. Cronan, and

A. D. Irving, for $200,000, was reported September 26, and November 2, 1893, was confirmed. This appeal was taken October 18, 1893.

The errors assigned, excepting the first, which is waived, and the eighth, which is not briefed, are stated as follows: "(2) The circuit court erred in rendering a decree for any further or greater sum than the amount due upon said trust deed, for interest on said bonds, and for the amount due on the sinking fund. (3) The circuit court erred in finding and decreeing that the sum of five hundred and fifty-five thousand three hundred and forty-nine dollars and ninety-three cents ($555,349.93) was due upon said trust deed and bonds secured thereby. (4) The circuit court erred in finding and decreeing that the said trust deed was a lien upon the lands described in said first amendment to said original bill, being the lands acquired by said Grape Creek Coal Company after the execution of said trust deed, superior to the lien of the judgments of said Grape Creek Coal & Coke Company, Mason M. Wright, and John B. Brown. (5) The circuit court erred in finding and decreeing that the entire amount of said mortgage indebtedness was due. (6) The circuit court erred in not fixing a definite amount to be paid by said defendant Grape Creek Coal Company and the the other defendants within twenty days from the entry of said decree. (7) The circuit court erred in leaving uncertain the amount to be paid by said defendants, and each of them, in order to prevent a sale of said mortgaged premises."

J. B. Mann (C. H. Remy, of counsel), for appellants.

H. B. Turner and William Burry, for appellee.

Before WOODS and JENKINS, Circuit Judges, and BAKER, District Judge.

WOODS, Circuit Judge (after stating the case). The second and third specifications of error do not, in conformity with the eleventh rule of this court, "set out separately and particularly" the error intended to be urged. An assignment cannot be good, under this rule, if it is necessary to look beyond its terms, to the brief, for a specific statement of the question sought to be presented. Under the first of these assignments, it is urged that the principal of the mortgage debt was erroneously declared due; and under the second, after claiming that all said concerning the first was applicable to this, it is urged, in addition, that the court erred in allowing interest at six per cent., or more than five per cent., on overdue coupons, and on the principal of the debt from the time when the last coupons matured. There is in the record no assignment of error which properly raises the question of interest; and in respect to the principal of the debt, whether due or not, it was not only proper, but necessary, that the court should have found the amount unpaid, and decreed its payment out of the proceeds of the sale. There was therefore no error, as specified in the second assignment, even if it were otherwise sufficiently specific, "in finding and rendering a decree for any further or greater sum than the amount due." But the fifth specification states more definitely that the court erred in decreeing the entire amount of the mortgage indebtedness to be due, and, though it is not so treated in the brief, we will consider the question as presented by that assignment.

By the terms of the bonds the principal debt was not payable until the 1st day of April, 1916, and we find nothing in the conditions of the mortgage which authorized the court to declare the debt due

before that time. There is, confessedly, no specific provision that the principal may be declared due for default in the payment of interest; but from the authority given the trustee in possession, under the first condition, to apply the residue of income upon the principal of outstanding bonds, and, under the second condition, to cause the property to be sold as an entirety, and from the provision of the third condition, that, if the trustee is proceeding to sell the mortgaged premises for default in interest or sinking fund, the mortgagor, at any time before sale is made, may pay all interest then in arrears, costs, expenses, disbursements, and reasonable compensation, and that thereupon the trustee shall discontinue the proceeding and surrender the possession, it is insisted that the power to treat the principal debt as due should be inferred. The inference, we think, is neither necessary nor reasonable. To use the language of the supreme court in Railroad Co. v. Fosdick, 106 U. S. 47, 75, 1 Sup. Ct. 10:

"It does not affect this conclusion that, by the terms of the sixth article of the conditions of the mortgage, it is provided that upon the exercise of the power thereby conferred, resulting in a sale of the mortgaged premises for a single default in the payment of interest (it may be one coupon, merely), the property is to be sold as an entirety, and free of the incumbrance of the mortgage, so as to pass all the title, both of the mortgagor and mortgagee, and that the proceeds of the sale are to be applied, after the payment of overdue interest, to the payment of the principal of the debt, though not yet due. The provision does not, either in terms or in effect, make the whole debt due before the stipulated day of payment. It is simply the application to the case of a sale by the trustees, under the power, of the practice of courts of equity in cases of judicial sales upon foreclosure. In either case the right of the mortgagee to redeem, and thus prevent the sale, is preserved, on payment, not of the unmatured principal of the debt, but merely of the interest then actually due and in arrears,—the very right which, by the decree now in question, was denied. If authority is needed on such a proposition, it will be found in Holden v. Gilbert, 7 Paige, 208, and Olcott v. Bynum, 17 Wall. 44."

We find nothing inconsistent with the foregoing in Pope v. Durant, 26 Iowa, 233.

It is contended further that, if the decree was erroneous in this respect, no harm was done the appellants, because, "by a tender of the amount due, the decree would have been stayed, and the premises not been sold. Defendants could have come into court, and tendered the amount due, and had the proceedings dismissed." Down to the entry of the decree, the defendants doubtless had that right; but, once the decree had passed, it was no less conclusive in respect to the amount due than of other matters involved and determined. We cannot agree that the mortgagor's right to have the proceedings for foreclosure discontinued upon payment of interest in arrears, costs, etc., was so far separate and independent that it needed not to be embodied in the decree, and that the court would have enforced it, as against the trustee, at any time before sale, upon any of the defendants tendering the amount required, and moving to have the case dismissed. If the trustee had been proceeding under the power, as was the case in Tiernan v. Hinman, 16 Ill. 400, the mortgagor's right to prevent a sale by paying the overdue interest might have been asserted, as provided by the terms of the deed, at any time before

sale; but, when the principal debt has been declared due by a decree of court, it must be so treated for every purpose, until in some lawful way the decree shall have been modified or set aside. Under such a decree the debt cannot be regarded as due for one purpose, and not due for another purpose. The rights of the trustee and of the mortgagor in this respect were correlative, and it was error for the one to take an adjudication which, either in terms or by necessary implication, was inconsistent with the right of the other.

It is shown by a supplemental transcript that a sale made under the decree had been reported before the appeal, and afterwards confirmed; and it is insisted that for that reason the decree, if erroneous, may be modified, but should not be reversed, as against the purchaser. Brignardello v. Gray, 1 Wall. 627. But whether or not the sale in this case was bona fide, and should stand, is not a question which can be determined now, or which should be allowed to affect the character or scope of our action on the appeal. Of the amount declared due, which the mortgagor was required to pay within twenty days in order to save the mortgaged property from sale less than one-tenth was actually due. The error, therefore, was a substantial one, which, to the extent possible, should be corrected by reversing the decree.

The objection that the decree left uncertain the amount to be paid in order to prevent a sale we do not consider important. It amounted to no more than a reservation of power by the court to include in the decree a sum sufficient to pay, besides taxable costs, the trustee's compensation, counsel fees, and other expenses or disbursements which should thereafter be allowed by the court. The items enumerated are of the nature of costs, which, by common practice, and from necessity, are often left, when decrees or judgments are pronounced, for subsequent taxation. No harm can result, because it is always in the power of any party interested to move for a determination of whatever in such particulars had been left at large.

In respect to the after-acquired property, it is not claimed that the mortgage was invalid or ineffective as between the parties to the instrument. If, therefore, the court erred in extending the lien of the mortgage over property of that kind, the judgment creditors alone were harmed by the ruling, and the error should have been assigned by them, or in their behalf, only. MacDonald v. U. S. (by this court) 63 Fed. 426, and cases there cited. But, if properly presented, the question can hardly be deemed to have the general scope given it in the discussion. The theory upon which courts of equity extend the lien of a mortgage to after-acquired property is "that the mortgage, though inoperative as a conveyance, is operative as an executory agreement, which attaches to the property when acquired." Borden v. Croak, 131 Ill. 68, 22 N. E. 793. While in this instance the mortgage, by the general terms of the granting clause, covers all other lands in Vermilion county, besides those described, which the company shall acquire, there is an express covenant for further conveyance and assurance, which is restricted to future-acquired property purchased by the company "for use in the working and carrying on of its said mines." It would seem, therefore, that this

mortgage, while valid in respect to lands acquired for mining pur-poses, should not be construed to include, and it does not appear that by the decree below it was made to include, lands which were not purchased for use in the company's business. We think there was no error in this particular. For the error of the court in de-claring the principal of the mortgage debt due, the decree below is reversed.