**In re SOLAR MFG. CORP. (two cases).**

**Nos. 10025, 10032.**

United States Court of Appeals
Third Circuit.

Argued Aug. 18, 1949.

Filed Aug. 24, 1949.

Samuel Marion, New York City, for appellants in No. 10032.

Morton Stavis, Newark, N. J., for appellants No. 10025.

Edward J. O'Mara, Jersey City, N. J., George Zolotar, Securities & Exchange Commission, New York City, for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

These appeals present the question whether reversible error was committed when the District Judge ordered the sale of assets of the debtor before him in reorganization proceedings. The corporation in question is the Solar Manufacturing Corporation. A Chapter X petition for reorganization was filed for it on December 14, 1948. Trustees were appointed. On July 5, 1949, the trustees sought a court order for the sale of virtually all of the assets of the corporation, excepting inventory and cash,[1] for $525,000, to the Sprague Electric Company, a competitor in the condenser manufacturing field. The proposed sale was approved by the court. Objections to the order have been made by the Securities and Exchange Commission, by the labor union whose members worked in the Solar manufacturing plant and by a debenture holder claiming to represent himself and other debenture holders.

■ The legal question for us is whether the sale as proposed and approved complies with the provisions of Chapter X, 11 U.S.C.A. § 501 et seq. Reorganization proceedings are for the purpose of readjusting a business life so that it can continue, not for dividing up its effects after the enterprise has died. Nevertheless, it is provided in the statute and courts have recognized that a sale of the entire assets of a debtor in reorganization is a proper part of Chapter X proceedings when the sale is made pursuant to a plan. Bankruptcy Act, § 216(10), 11 U.S.C.A. § 616(10); Patent Cereals v. Flynn, 2 Cir., 1945, 149 F.2d 711. Indeed the S. E. C. advises us that since 1944 more than one-third of the plans confirmed in the New York-New Jersey-Pennsylvania area, to which it was a party, have involved sales of all the income producing assets of the debtor.

It is possible, also, and the statute so provides in Section 116(3), 11 U.S.C.A. § 516(3), to have a sale of corporate assets not in pursuance of a plan of reorganization under certain circumstances. But it is to be borne in mind that such a sale is not surrounded by the rather elaborate safeguards which the Congress has provided to protect the interests of those whose money is tied up in the tottering enterprise. And it gives those interested parties no opportunity to vote on a plan after it has already had the benefit of court scrutiny and approval.[2] Neither does such peremptory sale have the protection of the simpler but substantial safeguards surrounding the ordinary sale in a bankruptcy proceeding.[3]

■ We think that sales under court order not in pursuance of a reorganization plan are to be confined to emergencies where there is imminent danger that the assets of the ailing business will be lost if prompt action is not taken. If this corporation had a warehouse full of meat in storage and was without money to buy ice it is quite clear that emergency treatment would have to be applied to safeguard the assets. But we do not think that in the ordinary case the elaborate protective provisions of Chapter X are to be short circuit-

---

[1] Also excluded from the offer were Solar's accounts receivable, a factory owned by it in Bayonne, New Jersey, and a factory leasehold in Paterson, New Jersey.

[2] Among the safeguards provided for in Chapter X proceedings are study of the plan by the S. E. C., § 172; examination of the debtor's officers by the trustee, § 167(2); a report by the trustee as to the existence of possible fraud or mismanagement in the debtor's affairs, § 167(3); a judicial hearing on a plan of reorganization submitted by the trustees, with an opportunity for creditors · and stockholders to submit amendments, objections or alternative plans, § 169; and approval of the plan by two-thirds of the creditors and a majority of the stockholders, who must have before them for consideration a copy of the plan, the opinion of the trial judge and the report of the S. E. C., §§ 175, 176.

[3] In bankruptcy proceedings, a complete and detailed appraisal is required, § 70, 11 U.S.C.A. § 110, General Order in Bankruptcy No. 17(1), and there is usually a sale at auction, General Order in Bankruptcy No. 18.

ed by a trustee's sale on court order without going through the usual statutory procedure.[4] The decisions under the sections involved in Chapter X bear out this view. Thus the Second Circuit approved the sale of the property of a brewery following an express showing that the assets would deteriorate excessively in a short period of time when the brewery was not being operated. In re Loewer's Gambrinus Brewery Co., Inc., 2 Cir., 1944, 141 F.2d 747.[5]

We do not find in this case any such emergency which justifies a sale, not in pursuance of an approved plan, of substantially all of the debtor's assets. The business had not been profitable after the War. But under the trustee operation conditions certainly improved. The trustees brought the cash position of the company up to $499,487 by July 12, 1949, by the sale of obsolete inventory, machinery and the Bayonne plant. The losses from December 14, 1948, to May 31, 1949, are reported as $139,315. But of this amount, $108,639 is a book loss charged to depreciation. We do not mean to indicate that such an item lacks reality, but we think that it is proper to separate actual operating losses from those charged to depreciation when examining facts to see whether an emergency exists. Unproductive equipment from a closed Chicago factory was disposed of; likewise a plant at Bayonne. The price brought by the latter was disappointing but an undesirable asset was disposed of. In short, the conduct of the enterprise under the trustees has shown a very considerable improvement over that under the previous management.

What kind of emergency confronted the trustees here? There was some testimony to the effect that real estate val-

ues had deteriorated[6] between spring and summer. We know as a matter of judicial notice that real estate is not booming as it was during the immediate post-war building shortage. We likewise know that the economic situation of the country is not that of acute crisis, where managers of a business must sell assets for anything they can get to save something out of a wreck. The real estate at North Bergen has been appraised at $345,000. There is testimony in the trustee's report that it is in good usable condition and consists of a good usable factory. The other assets of the business were appraised at $408,600 on a going concern basis; at $272,383 on a liquidating basis. The present sale contemplates a pretty severe sacrifice in selling so far below these appraisals.

The trustees, as appellees, have taken the position that Solar's assets are further rendered "perishable" by the fact that Sprague's offer is conditioned upon almost immediate acceptance. This contention asserts the self-destructive proposition that an offer of purchase may itself beget the emergency which is prerequisite to its acceptance and suggests that an impatient purchaser may stampede a reorganization court out of the safeguards of Chapter X.

If this were all there were to the case, however, it would be a serious question whether we would be justified in saying no to a business transaction urged by the trustees and satisfactory to the court. In the view we take of the case, however, we are not substituting our discretion for theirs. We are saying that the safeguarding provisions of Chapter X are not to be ignored in the sale of the assets of a business unless an emergency exists. We do

---

4 See Hearings Before Subcommittee of the Senate Committee on the Judiciary, 75th Cong., 2d Sess., on H. R. 8046 (Revision of the National Bankruptcy Act), p. 127 (1938); Sen. Rep. No. 1916, 75th Cong., 3d Sess. (1938) 22.

5 A debtor's vending machines may be sold when they are in the hands of the manufacturer, who claims a lien upon them, and when the trustee has no funds with which to redeem them. Frank v. Drink-O-Matic Inc., 2 Cir., 1943, 136

F.2d 906. A grain elevator lease may be "perishable" when it has only sixty days to run and the crop movement season is imminent. In re Rosenbaum Grain Corp., 7 Cir., 1936, 83 F.2d 391.

6 A professional real estate appraiser testified that "on properties of this character the value has diminished ten to fifteen per cent." Another appraiser testified that the rest of the debtor's assets were "very much in a declining market."

not think that the facts of the present case present such an emergency as justifies the short-cut proposed to be taken. We therefore reverse.

The judgment of the District Court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.