**In re PURE PENN PETROLEUM CO., Inc.**
**In re SHEEHAN.**

No. 219, Docket 21982.

United States Court of Appeals
Second Circuit.

Submitted March 14, 1951.

Decided May 9, 1951.

852

Pure Penn Petroleum Company, Inc., a producer of oil and gas and owner of an oil and gas lease, on January 24, 1950, filed its petition as a debtor for an arrangement under § 322 of Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 722. The

petition proposed an arrangement by which unsecured merchandise creditors were to receive payment of 50% in six months and the balance at the end of the year, while the other unsecured creditors were to receive 2% within three months and 5% every three months thereafter until the remaining 98% was paid; the debtor was to continue in possession, operating the business, and to set aside all money it received, to be used in carrying out the proposed arrangement. Appellant, not a merchandise creditor, has a claim on a note for $12,480.

The judge, on January 24, made an order restraining any proceeding against the debtor and continuing the debtor in possession, operating the business. Shortly thereafter all the unsecured creditors, except the appellant, accepted the arrangement, but no meeting of creditors was ever held.

Some eight months later, on November 13, the debtor filed (a) a petition for leave to sell all of its assets to a designated purchaser at a price of $29,500 and (b) a petition proposing the following modified arrangement: Out of the proceeds of the sale, there were to be paid in full (1) payroll and taxes of $876.96, (2) the principal and interest on a loan of $1,647.95 (owing to the debtor's president, and contracted with the court's approval), and (3) the merchandise creditors with claims aggregating $4,605.34; the balance of the proceeds, or approximately $22,000.00, was to be paid pro rata to the other unsecured creditors with aggregate claims of some $56,520.00, consisting of salary claims of $6,600 and claims on notes in the amount of $49,920.00. The petition for the sale stated that the operation of the oil and gas lease still continued to produce oil; that "the oil runs continued to decrease," and the petitioner "finds it unfavorable to operate the property any more, * * * in view of the rising costs of labor and the decrease in production"; that "the greatest value that * * * the lease now has is the value of the pipe and machinery"; that the cost of pipe has risen and new pipe is not readily available, so "that the present is the most propitious time for the sale of the same"; that petitioner had endeavored to sell the property to many persons; that the best offer received was $29,500.00 and petitioner believes it could receive no better offer; and that because of the condition of the oil lease, petitioner cannot obtain the cash required under the provisions of the proposed modified arrangement. Attached to the original petition, filed in January, were statements of the debtor showing that the cost of its land and fixed assets was $434,741.41; its pipe and fittings were there shown to have cost $104,638.78, and its power and well equipment, $93,823.32.

All the unsecured creditors except appellant consented to the sale and to the modified arrangement. The petition for leave to propose the modification of the arrangement also referred to the sale and prayed (1) leave to propose the modification and (2) authority to make the sale. This petition stated that no notice of the application should be given to any creditor except appellant since all other unsecured creditors had consented. On November 13th the court ordered appellant, "the only adverse party," to show cause why the court should not authorize the sale and the petition for leave to propose the modified arrangement. On December 4, 1950 the court, without calling a creditors' meeting, entered two orders; one order confirmed the modified arrangement, and the other authorized the sale. Appellant has appealed solely from the order approving the sale.

Raichle, Tucker & Moore, Buffalo, N. Y. (Frank G. Raichle, Buffalo, N. Y., of counsel), for appellant.

Samuel Sapowitch, Buffalo, N. Y. (William Weisman, New York City, of counsel), for appellee.

Before SWAN, CHASE, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

Since appellant did not appeal from the order confirming the modified arrangement, we may not consider defects in that order, although it was more or less coupled

with the order authorizing the sale.[1] We turn, then, to the sale order.

Under Chapter XI, a sale of all the debtor's assets may be authorized, pursuant to § 313(2), 11 U.S.C.A. § 713(2), only "upon cause shown". This section is worded the same as § 116(3), 11 U.S.C.A. § 516(3), relative to such a sale in a Chapter X proceeding. It has been held that to prove "cause" for a sale under § 116(3) it is necessary to show that the assets are, in effect, "perishable"; such a sale must "be confined to emergencies where there is imminent danger that the assets of the ailing business will be lost if prompt action is not taken." In re Solar Mfg. Corp., 3 Cir., 176 F.2d 493, 494. See also In re V. Loewer's Gambrinus Brewing Co., Inc., 2 Cir., 141 F.2d 747, 748, where we stated the facts as follows: "There was no working capital on hand sufficient to operate the business and the creditors and stockholders were unwilling to furnish any. With the approach of warm weather the vats, kettles and other brewery machinery would deteriorate rapidly and lose substantially all their value, while both real and personal property would be absorbed by the mortgagee." We think § 313(2) must be similarly interpreted.

The debtor here, therefore, was obliged to allege and had the burden of proving the existence of an emergency involving imminent danger of loss of the assets if they were not promptly sold. The petition for sale fell far short of alleging such facts. Nor is there a finding of fact, based upon evidence, supporting the conclusion that "cause" had been shown. Such a finding is required.[1a]

Section 216(10), applicable to a Chapter X proceeding, provides that a plan may authorize the sale of all the assets "at not less than a fair upset price" and the distribution of the proceeds among the creditors. Although Fidelity Assurance Ass'n v. Sims, 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032, throws some doubt on the scope of that section, the Sims case has been held to authorize a sale in pursuance of a Chapter X plan, at least where the original Chapter X petition was filed in good faith.[2] But Chapter XI, 11 U.S.C.A. § 701 et seq., contains no provision such as § 216(10); and Section 101, part of Chapter X, 11 U.S.C.A. § 501 et seq., states: "The provisions of this chapter shall apply exclusively to proceedings under this chapter." A report of the Senate Judiciary Committee, in connection with the 1938 revision of the Bankruptcy Act, said that § 101 "prevents the extension and application of any provisions of Chapter X to other chapters of this bill." [3]

There are good reasons why Congress provided that a sale of all assets may be part of a Chapter X plan but did not so provide with respect to a Chapter XI arrangement: In Chapter X, under § 167, an independent trustee ordinarily investigates all matters relating to the property of the company, examines the officers of the debtors and others concerning such matters; under § 169, the trustee prepares and presents the plan which the judge considers together with objections or alternative plans proposed by any creditor; under § 175, only after the judge approves the plan do the creditors vote on it; under § 176, consents to a plan can ordinarily not be

---

1. In these circumstances, we are not to be taken as saying that the original arrangement was valid or filed in good faith, for we have no occasion to consider those questions.

1a. See General Order No. 37, 11 U.S.C.A. following section 53, which makes the procedural rules, including Rule 52(a), 28 U.S.C.A., applicable to Chapter XI proceedings. 1 Collier Bankruptcy (14th ed.) Section 2.81, 8 Collier, Sections 1.35, 1.37: Kelley v. Everglades Drainage District, 319 U.S. 415, 418, 63 S.Ct. 1141, 87 L.Ed. 1485; Rosenberg v. Heff-

ron, 9 Cir., 131 F.2d 80–82; In re Stein, D.C., 43 F.Supp. 845, 847.

2. See Country Life Apartments v. Buckley, 2 Cir., 145 F.2d 935, 938; Patent Cereals v. Flynn, 2 Cir., 149 F.2d 711.
 For discussion of other facets of the interpretation of the Fidelity Assurance decision, see Cary, Liquidation of Corporations In Bankruptcy Reorganization, 60 Harv.L.Rev. 173 (1946); 6 Collier, Bankruptcy (14th ed.) 3451, 3512–3513.

3. See 8 Collier, Bankruptcy (14th ed.) § 1.01 note 3.

obtained until the judge has approved it; and under § 216(10) the sale must be "at not less than a fair upset price". The difference between a Chapter X and a Chapter XI plan is the more striking when, as here, the Chapter XI petition is filed under § 322, for then no trustee is appointed to administer the estate before confirmation of the arrangement.[4]

It is true that § 306(1) defines a Chapter XI arrangement as "any plan of a debtor for the settlement, satisfaction, or extension of the time of payment of his unsecured debts, upon any terms". It is urged that this section imports into Chapter XI something the equivalent of § 216 (10)— i. e., that it authorizes a plan for a sale of all the assets and the liquidation of the unsecured debts. This would mean that a Chapter XI plan could bring about the same result as ordinary bankruptcy proceedings but minus the protective provisions which are part of the latter, especially as to a sale of all the assets.[5] We cannot accept that interpretation of § 306(1). It must be read together with § 356 which provides that "An arrangement * * * shall include provisions modifying the rights of unsecured creditors". We agree with the following comment:[6] "But notwithstanding the breadth of the definition of an arrangement under Chapter XI, the arrangement must comprehend something more than a mere surrender by the debtor of all his assets for liquidation and distribution to creditors; an arrangement is defined as a 'plan of the debtor,' but there is no 'planning' by a bankrupt in proposing that his creditors be given what the law provides in liquidation under straight bankruptcy. The requirement that an arrangement shall include provisions modifying the rights of creditors clearly means some modification devised by the debtor, not by Congress." From the facts meagerly appearing in this record, we assume that, in ordinary bankruptcy, the merchandise creditors, with claims aggregating $4,605.34, and the salary claims aggregating $6,600.00, would have been entitled to priority over the other unsecured creditors, with note claims aggregating $49,920.00.[7] The only difference between the confirmed liquidation arrangement and ordinary bankruptcy is, then, that holders of salary claims, aggregating $6,-600, have consented that their claims are to be subordinated to the $4,605.34 of claims of the merchandise creditors. That subordination of those salary claims, with the result that they cannot be paid in full, would have been invalid without their consent, either in ordinary bankruptcy or under Chapter XI, at least without the consent of a majority in number and amount of that class, § 362, 11 U.S.C.A. § 762. The mere consent to such subordination by one small group of creditors does not (at least in a case, like this, where no emergency is pres-

---

4. See 8 Collier, Bankruptcy (14th ed.) § 5.49.

5. See § 70, sub. b, 11 U.S.C.A. § 110, sub. b; General Orders Nos. 17(1) and 18; cf. In re Solar Mfg. Co., 3 Cir., 176 F. 2d 493, 494.

6. 8 Collier, Bankruptcy (14th ed.) 1950 Cumulative Supplement, p. 7 note 19.

7. The claims of the unsecured creditors other than the merchandise and salary creditors consisted of notes held by the small number of stockholders for loans to the debtor apparently in proportion to their holdings of stock. Their claims were therefore perhaps subordinate to those of the merchandise and salary creditors. See In re V. Loewer's Gambrinus Brewing Co., 2 Cir., 167 F.2d 318.

 If these claims were not thus subordinate, the original proposed arrangement would have been invalid in this respect, since it would have proposed a classification of creditors not in accordance with the requirement of a "fair and equitable" plan or one "for the best interests of the creditors." See Section 366(2) and (3); 8 Collier (14th ed.) 1168–1170, 1178–1179; cf. Case v. Los Angeles Products Co. Ltd., 308 U.S. 106, 60 S.Ct. 1, 84 L. Ed. 110.

 To give priority to merchandise creditors, merely as such, as against other unsecured creditors would be improper in such a case as this, especially where the amount of the merchandise claims in the aggregate is not negligible as compared with the total aggregate claims of all the unsecured creditors; particularly is such classification improper where, as here, under the modified arrangement, the debtor is not continuing business. See 8 Collier, Bankruptcy (14th ed.) 1185–1186.

ent) validate a Chapter XI liquidation plan which deprives any other non-consenting creditor (who will not be paid in full) of the benefits of the provisions safeguarding a sale in ordinary bankruptcy. Accordingly, the sale here cannot be justified as a part of a valid Chapter XI arrangement. The fact that the great majority of the noteholders consented to the invalid sale is immaterial.[8]

 We conclude, therefore, that the order authorizing the sale was in error and must be reversed. As there was no stay or supersedeas bond, and as the district court had jurisdiction, if the sale was completed and confirmed before the appeal, the sale cannot be undone, if the purchase was bona fide, i. e., not made indirectly for the debtor or for some other party or parties to the Chapter XI proceeding.[9] "But whether or not the sale in this case was bona fide, and should stand, is not a question which can be determined now, or which should be allowed to affect the character or scope of our action on the appeal."[10]

If on the remand it should appear that the sale was not bona fide,[10a] then, as the debtor will presumably be unable to deposit the funds pursuant to the previously confirmed arrangement, this will follow: The Chapter XI proceedings must be dismissed or transferred to ordinary bankruptcy,[11] unless the debtor either (1) reverts to the arrangement originally proposed in the original petition or (2) offers a new valid modified arrangement. If either (1) or (2) occurs, then the court (pursuant either to § 334 or § 365) should promptly call a creditors' meeting, at which the debtor will be examined; before confirming either the initial or a new modified arrangement, the court must see that all the requirements of § 366 are met.

Reversed and remanded.

SWAN, Circuit Judge (dissenting).

My brothers' opinion holds that in Chapter XI proceeding the bankruptcy court has power to authorize a sale of the debtor's assets only by virtue of section 313(2), 11 U.S.C.A. § 713(2), and that such a sale must be confined to assets which are, in effect, "perishable." It well may be that a proceeding under Chapter XI cannot be used as a substitute for ordinary bankruptcy where initially the only object of the arrangement is liquidation and distribution of the debtor's assets.[1] This is not such a case. No one doubts that the original plan of arrangement satisfied the requirements of Chapter XI or that it was offered in good faith. The question presented is whether a bankruptcy court may, after an initial plan has proved unworkable, order the sale of the debtor's assets and distribute the proceeds pursuant to an arrangement under Chapter XI. In my opinion the provisions of Chapter XI are broad enough to permit it to do so. In section 306(1), 11

8. Cf. Case v. Los Angeles Lumber Products Co., Ltd., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110.

9. Brignardello v. Gray, 1 Wall. 627, 634, 17 L.Ed. 693; Davis v. Gaines, 104 U.S. 386, 391, 26 L.Ed. 757; Galpin v. Page, 18 Wall. 350, 374–375, 21 L.Ed. 959; Ex parte Morris, 9 Wall. 605, 607, 19 L.Ed. 799; Bank of United States v. Bank of Washington, 6 Pet. 8, 8 L.Ed. 299; Mackenzie v. A. Engelhard & Sons Co., 266 U.S. 131, 143–144, 45 S.Ct. 68, 69 L.Ed. 205; Hays v. Sound Timber Co., 9 Cir., 261 F. 571, 573, 29 A.L.R. 1067; Robinson v. Alabama & G Mfg. Co., C.C., 67 F. 189, 192–193; affirmed, 5 Cir., 72 F. 708; Grape Creek Coal Co. v. Farmers' Loan & Trust Co., 7 Cir., 63 F. 891, 896; 31 Am.Jur. 418–419; Cf. Grape Creek Coal Co. v. Farmers' Loan & Trust Co., 7 Cir., 80 F. 200; Northwestern Fuel Co. v. Brock, 139 U.S. 216, 220–221, 11 S.Ct. 523, 35 L.Ed. 151. See also Butler v. Ungerleider, 2 Cir., 187 F.2d 238, 239, and cases there cited, as to privies.

10. Grape Creek Coal Co. v. Farmers' Loan & Trust Co., 7 Cir., 63 F. 891, 896.

10a. And that there are no subsequent intervening rights of bona fide strangers.

11. See Section 376 (2); 8 Collier, Bankruptcy, 14th ed., § 10.04.

1. Such was the situation in Matter of Western Steel & Equipment Corp. (Ref. Oregon), 45 Am.Bankr.Rep.,N.S., 361. Compare In re Magazine Associates, Inc., D.C., S.D.N.Y., 46 F.Supp. 808; 8 Collier on Bankruptcy, 14th ed., 1950 Supp., p. 7 n. 19.

U.S.C.A. § 706(1), "arrangement" is defined to include "any plan of a debtor for the settlement, satisfaction, or extension of the time of payment of his unsecured debts, upon any terms". The court "may" authorize the sale of "any property of the debtor * * * upon such terms and conditions as the court may approve". Section 313(2), 11 U.S.C.A. § 713(2). The arrangement "may" include provisions for the continuation of the debtor's business or "any other appropriate provisions not inconsistent with this chapter." Section 357(5) and (8), 11 U.S.C.A. § 757(5) and (8). In sharp contrast with the grants of permissive authority which these sections vest in the court, section 356, 11 U.S.C.A. § 756, is mandatory: the arrangement "shall include provisions modifying or altering the rights of unsecured creditors". The modified arrangement, which the court confirmed, divided the creditors into three classes, provided payment in full for two of the classes and pro rata partial payment for the third class, and proposed a sale of the debtor's assets to obtain the funds necessary to carry out the arrangement. In my opinion the proposed alteration of the rights of the third class is within section 357(1) and the proposal to raise the necessary funds by a sale is a permissible provision within section 357(8). My brothers suggest that the confirmed arrangement made no change in the rights of the unsecured creditors as between merchandise creditors and note-holder creditors, since the merchandise creditors would be entitled in ordinary bankruptcy to priority over the note-holders (stockholders) listed in class three. I am not convinced that the evidence in the record sustains this conclusion. But passing this, I can see no basis for thinking that the merchandise creditors would in bankruptcy proceedings be entitled to priority over the salary claims held by three of the listed creditors. Such priority as the plan gives the merchandise creditors over the salary claims is by virtue of § 362, 11 U.S.C.A. § 762.

In neither of the cases cited by my brothers for the proposition that the power of sale is confined to perishable assets was the sale made pursuant to a plan of reorganization. Authority for a sale under a Chapter X plan is found in section 216 (10), 11 U.S.C.A. § 616(10). Because no similar section appears in Chapter XI, my brothers think that authority is lacking to order a sale of the debtor's assets pursuant to a plan of arrangement. If a plan of arrangement which alters the rights of one class of unsecured creditors and proposes a sale to obtain the funds necessary to carry it out, is confirmed by the court, as it was in the case at bar, I cannot believe that the court lacks power to authorize the sale.[2] Nor am I alarmed by the absence of a provision such as is found in section 216(10), with respect to "a fair upset price." The appointment of an appraiser is within the court's discretion. Section 333, 11 U.S.C.A. § 733. If the power to order a sale is not to be found in section 313(2), of which I am not convinced, I would invoke section 2, sub. a(7), 11 U.S.C.A. § 11, sub. a(7), which invests courts of bankruptcy with power to "Cause the estates of bankrupts to be collected, reduced to money and distributed,"[3] or would imply the power as one necessary to carry out a confirmed plan of arrangement. I would affirm the order on appeal.

2. It is, moreover, difficult for me to understand why the assets of the debtor, which consist of plant and equipment and an oil and gas lease are not equally as perishable as those in In re V. Loewer's Gambrinus Brewery Co., Inc., 2 Cir., 141 F.2d 747, where they consisted of vats, kettles and other brewery equipment.

3. See 8 Collier on Bankruptcy, 14th ed., p. 171.