324 F.2d 104
 In the Matter of NORTHERN ILLINOIS DEVELOPMENT CORPORATION, an Illinois corporation, operating the Aurora Downs, Inc. (a wholly owned subsidiary), Debtor.
SPORTSERVICE CORPORATION, Creditor-Appellant,
v.
NORTHERN ILLINOIS DEVELOPMENT CORPORATION, Debtor-Appellee.
J. C. GRANATA, Shareholder-Appellant,
v.
NORTHERN ILLINOIS DEVELOPMENT CORPORATION, Debtor-Appellee.
Orville P. FOX and St. Charles National Bank, Trustee under Trust No. 85, Creditors-Appellants,
v.
NORTHERN ILLINOIS DEVELOPMENT CORP., Debtor-Appellee.
Charles P. McFARLAND, Shareholder-Appellant,
v.
NORTHERN ILLINOIS DEVELOPMENT CORP., Debtor-Appellee.
 No. 14292.
 No. 14293.
 No. 14316.
 No. 14317.
 United States Court of Appeals Seventh Circuit.
 October 17, 1963.
 
 Edward J. Kelly, John T. Coburn, Frank J. Roan, Chicago, Ill., for appellants Sportservice Corp. and J. C. Granata, Coburn, Kelly & Roan, Chicago, Ill., of counsel.
 Edward J. Wendrow, Chicago, Ill., Richard D. Shearer, St. Charles, Ill., for appellants Charles P. McFarland and others. Redman, Shearer & Gorecki, St. Charles, Ill., Winston, Strawn, Smith & Patterson, Chicago, Ill., of counsel.
 Wayland B. Cedarquist, Chicago, Ill., Charles H. Atwell, Aurora, Ill., for appellee, Northern Illinois Development Corp., Debtor. Nelson, Boodell, Foster, Sugrue & Crowley, Chicago, Ill., of counsel.
 Before DUFFY, CASTLE and KILEY, Circuit Judges.
 CASTLE, Circuit Judge.
 
 
 1
 These appeals[1] are prosecuted by the respective appellants from an order of the District Court which denied their petitions for review and affirmed, in all respects, orders of the Referee in Bankruptcy which denied objections filed to a Second Amended Plan of Arrangement submitted by Northern Illinois Development Corporation,[2] debtor-appellee, and confirmed said arrangement.
 
 
 2
 Appellants' claims of error upon which they predicate their request for reversal and for remand with directions to adjudicate the debtor a bankrupt and to liquidate its assets in a straight bankruptcy proceeding are reflected in their respective contentions which are summarized as follows:
 
 
 3
 In Appeal No. 14316 appellants Orville P. Fox and St. Charles National Bank, as Trustee under Trust No. 85, secured creditors, assail the arrangement on the ground that it exceeds the permissible scope of a Ch. XI arrangement and affects their rights as secured creditors in not providing for payment of interest accruing subsequent to November 14, 1961, on the secured indebtedness pursuant to the terms of the purchase contract creating the indebtedness.
 
 
 4
 In Appeal No. 14292 appellant Sport-service Corporation, an unsecured creditor, contends (1) the arrangement is not authorized under Ch. XI of the Bankruptcy Act because it provides for the sale of all of the assets of NIDC[3] and effects a liquidation of the corporation; (2) the value of the assets exceeds the $1,200,000.00 for which they are authorized to be sold at a private sale; and (3) the findings that the arrangement is feasible and workable, in the best interests of creditors, and proposed in good faith, are not supported by the record.
 
 
 5
 In Appeal No. 14317 appellant Charles P. McFarland, both an unsecured creditor and a shareholder of NIDC, makes contentions substantially the same as those advanced by Sportservice and in addition urges that the contemplated sale of assets violates a provision of Illinois law (Ill.Rev.Stat.1961, Ch. 32, § 157.72) under which a favorable vote of at least two-thirds of the outstanding shares entitled to vote is necessary.
 
 
 6
 In Appeal No. 14293 appellant J. C. Granata, a shareholder of NIDC, makes contentions similar to those advanced by Sportservice and McFarland.
 
 
 7
 The properties which are the subject of NIDC's purchase agreement with Fox and the Bank are described in our opinion in In re Northern Illinois Development Corporation, 7 Cir., 309 F.2d 882, cert. den. April 15, 1963, Fox v. Northern Ill. Development, 372 U.S. 965, 83 S.Ct. 1090, 10 L.Ed.2d 129. Subsequent to our opinion in that appeal the contract there involved for the sale of these assets of NIDC, which contract had been approved subject to confirmation of the then proposed plan of arrangement, terminated under its time limitation provision without the sale having been effected. Titus Haffa, the prospective purchaser, then made an offer proposing a purchase price of $1,150,000.00 and increased his earnest money deposit to $150,000.00. On April 30, 1963, Haffa and NIDC entered into an amended agreement providing for a purchase price of $1,200,000.00. On May 9, 1963, the referee entered an order approving this contract for sale subject to confirmation of an amended plan of arrangement to be presented by NIDC. The arrangement submitted was accepted by a majority in number and in amount of all unsecured creditors.
 
 
 8
 We will not repeat here the additional factual background which is set forth in our previous opinion (309 F.2d 882) but inasmuch as the instant appeals are being considered on a short record we do accede to appellants' requests that we take judicial notice of the record in the previous appeal in our consideration of the issues now presented.
 
 
 9
 From our review of the record we are convinced that the factual findings of the referee, left undisturbed by the District Court, have substantial support in the record. And unless such findings are clearly erroneous we have no right to reject them. In re Rafdo Enterprises, Inc., 7 Cir., 297 F.2d 505, 507. Furthermore, we perceive no error of law in the District Court's affirmance of the referee's rejection of the objections urged and his confirmation of the arrangement.
 
 
 10
 The contention of appellants Fox and the Bank that the arrangement deprives them of interest due and payable subsequent to November 14, 1961, under the provisions of NIDC's purchase agreement is without merit. The arrangement merely accepts and recognizes their secured claim in the status in which it finds it. It was the order of November 14, 1961, the District Court's affirmance of which was sustained on the prior appeal (309 F.2d 882), which declared Fox's attempted forfeiture unavailing, the NIDC purchase contract to be in full force and effect, and limited the payment of interest to November 14, 1961. The appellants made no contentions in their previous appeal with respect to the interest issue they now seek to raise. The record discloses nothing which has occurred since the affirmance of the November 14, 1961 order which would now afford a basis for modification of that order's provision precluding the payment of interest beyond its date — and that order is not subject to relitigation in the instant appeal. The Second Amended Plan of Arrangement does not purport to alter appellants' rights as secured creditors. It gives full recognition to the adjudicated status of their secured claim.
 
 
 11
 In support of their contention that the arrangement is not one authorized in a Ch. XI proceeding for the reason that the contemplated sale of assets and plan effect a liquidation of the corporation without compliance with the cited Illinois statutory provision, and affects their rights as shareholders, appellants McFarland and Granata rely on In re May Oil Burner Corporation, D.C.D. Md., 38 F.Supp. 516. But in that case there was an affirmative finding that the assets of the debtor-corporation exceeded its liabilities, and under the plan proposed the debtor was to become a holding company owning but 26% of the stock of a new corporation to which its assets would be transferred with the consequent dilution of the shareholder's right of control over corporate action, indirect loss of the shareholder's pre-emptive right to maintain his proportional interest as a stockholder, and loss of a right to share in management by loss of the right to vote in the first instance for directors in the new corporation. These factors serve to distinguish the case and to make it inapposite here.
 
 
 12
 The plan of arrangement here under consideration provides for no adjustment or alteration of shareholders' interests. Moreover, as we had occasion to observe in the previous appeal (309 F.2d 882, 885) "there is nothing in the record which indicates that a sale of the property under ordinary bankruptcy proceedings would produce any money for NIDC's stockholders". It is apparent from the record that no shareholder equity is available and under the circumstances here involved provisions as to shareholder consent are not meaningful. The authority of the District Court to approve a sale of all of the corporation's assets is not affected or circumscribed thereby.
 
 
 13
 The remaining main contention of Sportservice, McFarland and Granata is that the approval of the contract for sale and confirmation of the Second Amended Plan of Arrangement was error for the reason that a sale which disposes of all of the assets of a debtor corporation and an arrangement which in effect liquidates it are not permissible in a proceeding under Ch. XI of the Bankruptcy Act. These appellants argue that the basic purpose of Ch. XI is to effect a rehabilitation of a financially distressed or insolvent debtor and that its provisions may not be utilized as a substitute for a proceeding in straight bankruptcy to effect a liquidation. And, relying upon In re Pure Penn Petroleum Co., Inc., 2 Cir., 188 F.2d 851, 24 A.L.R.2d 1206, they urge that Section 313(2) of the Bankruptcy Act (11 U.S.C.A. § 713(2)) which provides the court may:
 
 
 14
 "(2) upon such notice as the court may prescribe and upon cause shown, authorize the receiver or trustee, or the debtor in possession, to lease or sell any property of the debtor, whether real or personal, upon such terms and conditions as the court may approve;"
 
 
 15
 does not permit of a sale of all of the assets of a debtor corporation and that Section 306(1) of the Act (11 U.S.C.A. § 706(1)) does not permit of a plan of arrangement which in effect results in liquidation.
 
 
 16
 But in Pure Penn Petroleum, where an order authorizing the sale of all of the corporation's assets was reversed, the court pointed out that no emergency was present which constituted "cause" which would warrant approval of such a sale. The requisite emergency factor is not lacking here. As we had occasion to observe on the prior appeal (309 F.2d 882, 885) "the corporation's principal asset — a race track, the disastrous financial experience with the first racing meet, and the fact that the party who would have been purchaser under an earlier contract approved by the referee and the court withdrew therefrom, all serve to amply demonstrate the highly speculative nature of a purchase of the property for the use for which it is fitted — the use necessary to realization of its potential value." And the subsequent events disclosed by the record now before us serve only to confirm that observation and to establish that both the potential value of this asset and its purchase at a price reasonably commensurate with its value for its highest and best use are indeed "perishable" factors. Cf. In re Rosenbaum Grain Corporation, 7 Cir., 83 F.2d 391, 393. The equities of the situation here presented and the best interests of the creditors make it imperative that the property be disposed of without further delay — and the record affords no basis for a conclusion that these assets will bring a price higher than that called for in the contract for sale which has been approved. As it is, the equity which will be available for distribution among the unsecured creditors has shrunk from 75% to 5% plus what may be realized from a pending lawsuit. It is our view that Ch. XI does not, on the facts here presented, require that the debtor be compelled to resort to further proceedings in straight bankruptcy to effect the sale and distribution which appears to be the only feasible solution and which has been consented to by the requisite unsecured creditor interests.
 
 
 17
 It has been recognized that where a sale of all the assets of a debtor in a proceeding designed for the purpose of effecting reorganization rather than liquidation is justified because of the existence of an emergency warranting such sale the fact that the sale is not in aid of a reorganization plan and will in effect result in a liquidation does not require that the sale await a liquidation in a straight bankruptcy proceeding. In re V. Loewer's Gambrinus Brewery Co., Inc., 2 Cir., 141 F.2d 747; Frank v. Drinc-O-Matic, Inc., 2 Cir., 136 F.2d 906.
 
 
 18
 The findings of the referee, left undisturbed by the District Court, establish the presence of the requisite emergency to satisfy the "cause" requirement of Section 313(2). In our opinion the approval of the contract for sale was not error — those findings are not clearly erroneous — and the fact that the sale results in a plan of arrangement which effects a liquidation does not in our opinion, on the facts of this case, require rejection of the arrangement, dismissal of the Ch. XI proceeding, and resort to a straight bankruptcy proceeding. We do not read Pure Penn Petroleum as so requiring. The references in that decision to the additional "protective provisions" with which an ordinary bankruptcy proceeding surrounds a sale of all the assets of a debtor and to the requirements of Section 356 (11 U.S.C.A. § 756) that a plan of arrangement do more than propose that creditors be given what the law provides in liquidation under straight bankruptcy i. e., modify or alter rights of unsecured creditors, are made with respect to a situation where no emergency is present requiring a sale in the best interests of creditors.
 
 
 19
 We have considered the other contentions advanced by the appellants but on the record before us find them without merit. The appellants would have us substitute our discretion for that of the District Court, and that under familiar principles we should not, and will not do.
 
 
 20
 The judgment order of the District Court is affirmed.
 
 
 21
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The four appeals were consolidated for oral argument before this Court and will be disposed of in one opinion
 
 
 [2]
 Referred to herein as NIDC
 
 
 [3]
 The Second Amended Plan of Arrangement proposes a sale of NIDC's assets with the exception of a claim for damages against appellants Fox and St. Charles National Bank, Trustee etc., which is the subject of a pending suit and declared in the debtor's schedule of assets to be not capable of precise dollar evaluation. The proceeds from this asset, if any are realized, are to be the subject of a second distribution under the arrangement