**In re BROOKFIELD CLOTHES, INC., Debtor.**

**Appeal of KREDIETBANK N.V.**

**No. 82 CIV 0022 (LBS).**

United States District Court, S.D. New York.

June 21, 1983.

Angel & Frankel, P.C., Joshua J. Angel, Eric S. Brown, New York City, for appellee Brookfield Clothes, Inc.

Cleary, Gottlieb, Steen & Hamilton, George Weisz, Scott Horton, Wanda Olson, New York City, for appellant Kredietbank N.V.

Sherman & Citron, P.C., Cecil A. Citron, Robert Kolodney, New York City, for amicus curiae Official Creditors' Committee of Brookfield Clothes, Inc.

## OPINION

SAND, District Judge.

This proceeding is an appeal from the Order of Bankruptcy Judge Prudence B. Abram, dated November 15, 1982, authorizing and approving the sale of substantially all of the assets of the debtor Brookfield Clothes, Inc. ("Brookfield" or appellee) to the Abraham Zion Corporation ("Zion"). The standard of review employed herein is that set forth in Emergency Bankruptcy Rule 1, which provides that the district court may hold a hearing, receive evidence, accept, reject or modify the order of the bankruptcy court and need give no deference to the findings below. Upon a review of the record and consideration of the memoranda submitted on this appeal, and having heard counsel at oral argument, we conclude that the order of the bankruptcy court should be affirmed.

The facts are as follows: on August 30, 1982, an involuntary petition for relief under Chapter 11 of Title 11, United States Code ("Bankruptcy Code" or "Code"), was filed against Brookfield, a manufacturer of men's clothing, by three of its trade creditors.[1] Brookfield filed a consent and order for relief dated September 1, 1982, and after entry of an Order for Relief by the Bankruptcy Court the following day, Brookfield remained in possession of its property and assets and in operation of its business as a debtor-in-possession pursuant to Code §§ 1107 and 1108. Appellant Kredietbank, N.V. (hereinafter "Kredietbank") holds a senior lien on certain equipment leased by HMH Associates to Brookfield.

It appears that from the commencement of the bankruptcy proceedings, Brookfield needed to either obtain permanent financing from an outside party or negotiate some form of sale of its business or assets. The company's only means of meeting its day-to-day expenses such as payroll were various interim financing agreements entered into between Brookfield and Chase Manhat-

---

1. Creditor confidence in Brookfield was badly shaken by the decision in *In re Braten Apparel Corp.*, 21 B.R. 239, 258–59 (Bkrtcy.S.D.N.Y. 1982), *aff'd*, 26 B.R. 1009 (D.C.S.D.N.Y.1982), which revoked the confirmed plan of arrangement of Brattan Apparel Corporation for that entity's failure to disclose its ownership of Brookfield.

tan Bank, N.A. On September 21, 1982, Brookfield's unionized employees walked off the job because of the company's failure to meet certain health and welfare benefit obligations. The company ceased operations at that point.

Negotiations were immediately commenced with Zion, an entity that had expressed interest in acquiring Brookfield prior to the petition filing. The bankruptcy court scheduled a hearing for September 22, 1982, to consider Brookfield's application for approval of a sales purchase agreement between itself and Zion. Unable, however, to resolve certain objections raised by third parties—including Kredietbank—the application was withdrawn and the hearing cancelled.

In early November 1982, Zion once again expressed interest in purchasing Brookfield's assets. Renewed negotiations resulted in a second application by Brookfield for approval of an assets purchase agreement and the scheduling of a hearing on November 15 to consider the application.

Notice of the hearing was served on, among others, attorneys to the duly appointed Creditors' Committee; Brookfield's largest twenty creditors; and Kredietbank. In addition, notice of the proposed sale and hearing was published in The Daily News Record of November 12, 1982.

Briefly stated, the terms of the proposed sale, as set forth in the hearing notice and elaborated upon at the November 15 hearing, provided for Zion's purchase of Brookfield's assets; its right, title and interest, if any, in machinery and equipment subject to all existing and valid liens as may exist against Brookfield; all inventory; all accounts receivable subject to those loan advances made on or after August 30, 1982; certain specified leases; all sale orders; and all other tangible and intangible assets such as insurance policies, trade secrets, trademarks, names, and goodwill. The purchase price was $1.2 million. Among the conditions precedent to closing was the entry by the bankruptcy court of a final, non-appealable order authorizing the sale. Assets Purchase Agreement, ¶¶ 6.01(b), 6.02(b) (at-

tached as Exhibit A to Order Scheduling Hearing dated November 9, 1982).

At the hearing, Judge Abram fruitlessly inquired whether anyone present wished to make a higher or better offer. The court then proceeded to consider the Brookfield-Zion application and objections thereto.

Among Kredietbank's objections, and the basis of this appeal, was the contention that Bankruptcy Code § 363(b) did not empower the debtor in possession to undertake a sale of substantially all of its assets. Kredietbank maintained that such sales can be accomplished only pursuant to a duly adopted reorganization plan or in the course of a liquidation proceeding under Code Chapter 7, 11 U.S.C. §§ 701 *et seq.* The bankruptcy judge expressed her familiarity with certain authorities in agreement with Kredietbank's position, but stated her view that where the formulation and filing of a plan cannot, as a practical matter, precede an all-asset sale, the sale is nevertheless permitted under the Code.

Brookfield's counsel, being in agreement with the judge's characterization of the law, represented to the court its preparedness to file subsequent to the immediate sale a reorganization plan providing for the distribution of all of its assets, including the sale proceeds, to its creditors in accordance with the Code. Because one of the parties had raised the question whether Brookfield's principal was receiving any undisclosed consideration in the form of a continuing employment contract from Zion, counsel for both Brookfield and Zion represented to the court that no consideration whatsoever had been promised to any of Brookfield's principals.

The court then requested Brookfield's counsel to address itself to the issue of the reasonableness of the purchase price. Brookfield's counsel referred the court to the debtor's continuous yet otherwise unsuccessful efforts to sell the assets, offering to recite a "litany of prospective purchasers, none of whom we were able to bring to the Bench this morning." Transcript of November 15, 1982, 11:00 A.M. (hereinafter "AM Tr."), at 44. With regard to the need

to dispose of the business on a global basis, Brookfield's counsel pointed out the large portion of unfinished goods in inventory and the company's accounts receivable, the value of both of which would be substantially less were the company liquidated rather than sold as an ongoing entity.

Pursuant to the court's request, counsel for the Creditors' Committee expressed the view of the Committee, as follows:

"Under the circumstances, the committee which is well aware of the amount that is involved, and has followed the situation very, very closely, has authorized us to indicate its approval of the transaction contemplated." [2]

AM Tr. at 45. The Committee's counsel also set forth on the record the lack of interest of other prospective buyers with whom the debtor made contact; the absence of any higher offerer; the unfeasibility of a liquidation, rather than a sale; and finally, the reasonableness of the sales price. *Id.* at 44–45.

Despite the fact that counsel for Brookfield considered sufficient the representations on the record—which Kredietbank's counsel stated he had no reason to doubt—the bankruptcy judge ordered a hearing that afternoon on the necessity of an immediate sale.

Herman Soifer, chief operating officer of Brookfield, testified at the afternoon hearing. Soifer estimated the amount owed to his employees' union at $225,000 and stated that no funds were available to Brookfield to meet that liability and thereby resume operations. Transcript of November 15, 1982, 3:00 P.M. (hereinafter "PM Tr."), at 7. Brookfield's 1,000 employees were characterized as "holding still" in anticipation of a sale and prompt resumption of business. Soifer set the book value of the work-in-progress portion of the inventory at approximately $300,000 and its market value at virtually zero. *Id.* at 8–9. Soifer also testified that three other people who had expressed interest in acquiring Brookfield, have "disappeared from the scene" and that

no better offers were obtained. *Id.* at 9–10. Finally, Soifer disclaimed the existence of any understanding or agreement between himself and Zion by which Soifer would receive any money or consideration if the proposed sale were approved. *Id.* at 10–12.

At the conclusion of the afternoon hearing, the court approved the sale and entered the order to that effect.

## ISSUES

Kredietbank grounds this appeal on the contention that the sale of substantially all of the assets of a Chapter 11 debtor cannot be effected pursuant to Code § 363(b), but must instead either await the confirmation of a reorganization plan or a conversion of the reorganization to a liquidation proceeding under Code Chapter 7. Alternatively, Kredietbank argues that resort to § 363(b) for an all-asset sale is restricted to "emergency" situations, of which the instant case is not one.

■ For the reasons stated herein, we are of the view that an "emergency" all-asset sale is permitted under § 363(b) and that the circumstances confronting Brookfield were sufficiently exigent to warrant authorization of the sale pursuant to § 363(b).

## DISCUSSION

As a preliminary matter, we address debtor's claim that this appeal should be dismissed as moot. Section 363(m) provides:

(m) The reversal and modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of an appeal, *unless such authorization and such sale or lease were stayed pending appeal.* (Emphasis added).

■ Because no stay of the authorized sale was obtained, argues Brookfield, any

---

**2.** The Creditors' Committee has filed an *amicus* brief urging affirmance of the bankruptcy

court's order.

modification or reversal of the authorization we might find warranted could not under § 363(m) affect the sale, thereby rendering this appeal moot.

In response to this argument, Krediet-bank relies on ¶¶ 6.01(b), 6.02(b) of the Assets Purchase Agreement between Brookfield and Zion, which establish as conditions precedent to closing the entry "by the Bankruptcy Court" of a "final, non-appealable order" authorizing the sale. Krediet-bank contends that these provisions in effect operate as a consensually imposed stay of the consummation of the sale, pending the exhaustion of all avenues of appeal. Kredietbank relies for support on two cases, *In re CADA Investments,* 664 F.2d 1158, 1160 (9th Cir.1981) (construing Bank R. 805), and *In re Food Fair,* 81 Civ. 0362 (S.D.N.Y. filed Sept. 22, 1982) (Gagliardi, J.) (same), where the absence of a stay pending appeal was held to have been overcome by express agreement between buyer and debtor to condition the sale on the outcome of certain appeals.[3]

At oral argument, the Court inquired as to why a purchaser and seller would voluntarily relinquish the benefits of § 363(m) and, in the absence of the court-imposed stay, subject themselves to the potential of having their transaction nullified on appeal. Appellant's response by letter to the Court dated May 6, 1983, focused on the "good faith" requirement in § 363(m) and pointed out that a sale can be reversed or modified on appeal even absent a stay, if it is adjudged to have been in bad faith. *Cf. In re EDC Holding Co.,* 676 F.2d 945 (7th Cir. 1982) (construing § 364(e), which in relevant part is identical to § 363(m)). A cautious purchaser then would condition the sale's consummation on the exhaustion of all avenues of appeal, regardless of whether or not a stay had been sought and obtained.

We find appellant's position the more persuasive of the two. In so concluding, we recognize that if the concerns of Brookfield and Zion were, in fact, those suggested by cases such as *In re EDC Holding,* a narrowly drafted provision might have suited their ends and, at the same time, avoided the appeal with which they are now confronted. Nevertheless, that is not the case here. A fair and reasonable reading of ¶¶ 6.01, 6.02 evidences merely an intent to condition the closing on the entry of a "non-appealable" order, *i.e.,* one subject to no further appeals, regardless of the grounds of such appeals. We note, too, that this is not an instance in which appellant sought and was denied a stay pending appeal. In light of appellant's apparent and reasonable reliance on ¶¶ 6.01 and 6.02 for the effect of a stay, it would be inappropriate here to impart overriding weight to what may have been the unexpressed intent of the parties in drafting these provisions.

Proceeding to the merits, we begin with the statute itself, and note that a plain reading of § 363(b) supports Brookfield's position as to the propriety of the instant sale, even absent an emergency situation. Section 363(b) states:

> "The trustee after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

*See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 181–82 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. When read in conjunction with § 1107(a), which endows a debtor-in-possession such as Brookfield with all powers permitted a trustee,[4] § 363(b)

---

**3.** These cases consider Bankr.Rule 805, which provides:

> "*Unless an order approving a sale of property or issuance of a certificate of indebtedness is stayed pending appeal,* the sale to a good faith purchaser or the issuance of a certificate to a good faith holder shall not be affected by the reversal or modification of such order on appeal, *whether or not the purchaser or holder knows of the pendency of the appeal.*"

(Emphasis added).

**4.** "Section 1107(a) not only provides that the debtor in possession shall have the duties of a trustee in a chapter 11 case, but in addition, section 1107(a) states that the debtor in possession shall have all the rights and powers of a trustee, other than the right to compensation under section 330.... [Thus,] the debtor in possession, after notice and a hearing, may use, sell or lease property of the estate, other than in the ordinary course of business pursuant to section 363(b)."

suggests that the only precondition to Brookfield's sale of assets outside the "ordinary course of business" was notice and hearing, the sufficiency of which were concededly fulfilled here.

As against this plain meaning, however, we consider the legislative intent implicit in the adoption of Chapters 7 and 11 of the Bankruptcy Code. Congress' adoption of the procedural safeguards incorporated in those chapters militates against too freely permitting a Chapter 11 debtor resort to § 363(b).[5] An unqualified application of § 363(b) to a debtor's all-assets sale would allow for circumvention of these detailed procedural safeguards.

Courts that have considered all-asset sales pursuant to § 363(b) have reached differing conclusions. It has been held without qualification that such sales are permissible. *In re WFDR, Inc.,* 10 B.R. 109 (Bkrtcy.N.D.Ga.1981); *In re Tele/Resources, Inc.,* 6 B.R. 628 (Bkrtcy.S.D.N.Y. 1980) (no objecting parties). Other courts have authorized all-assets sales under § 363(b) where the debtor has established some degree of "emergency" necessitating an expeditious sale. *In re WHET, Inc.,* 12 B.R. 743 (Bkrtcy.D.Mass.1981); *In re Boog-*

*aart of Florida,* 17 B.R. 480, 5 Collier's Bankruptcy Cases 1441 (Bkrtcy.S.D.Fla. 1981); *In re White Motor Credit Corp.,* 14 B.R. 584 (Bkrtcy.N.D.Ohio 1981) (relying also on 11 U.S.C. § 105, provision recognizing inherent powers of bankruptcy courts).[6]

In addition to these authorities, consideration should be given to judicial constructions of the statutory antecedents to § 363(b) and Chapters 7 and 11. With regard to Chapter X proceedings, from which at least in part Code Chapter 11 was derived,[7] the Second Circuit in *Patent Cereals v. Flynn,* 149 F.2d 711 (2d Cir.1945), unqualifiedly held that a trustee could sell all the assets of the estate prior to the proposal and confirmation of a reorganization plan. In *In re Solar Mfg. Inc.,* 176 F.2d 493 (3d Cir.1949), the Third Circuit also recognized the trustee's power pursuant to § 116(3) to sell all the assets outside the context of a reorganization plan but confined the exercise of such power "to emergencies where there is imminent danger that the assets of the ailing business will be lost if prompt action is not taken." *Id.* at 494 (relying on *In re Loewer's Gambrinus Brewery Co.,* 141 F.2d 747 (2d Cir.1944)). *See also In re Northern Illinois Development Corp.,* 324

5 *Collier's on Bankruptcy* ¶ 1107.02[2], at 1107–4 (15th ed. 1983) (footnote omitted).

**5.** Primary among the provisions of Chapter 11, governing reorganization proceedings, are the filing of a disclosure statement, 11 U.S.C. § 1125; vote of creditors, *id.* § 1126; and confirmation standards, *id.* § 1129. Chapter 7, governing liquidation proceedings, provides for, *inter alia,* the appointment of a trustee to oversee the orderly collection, disposition and distribution of the property of the estate.

**6.** Kredietbank's reliance on *In re Braniff Airways, Inc.,* 700 F.2d 935 (5th Cir.1983), for the proposition that § 363 is unavailable for a sale of substantially all of debtor's assets is simply unfounded. The Court there expressly declined to address the issue whether § 363(b) is applicable to sales of all of the debtor's assets; reversal of the § 363(b) authorization was based on the narrower ground that the approved transactions in effect established the terms of a reorganization plan "*sub rosa* in connection with a sale of assets," at 940, and was thus "clearly outside the scope of § 363," *id.* at 939. Here, by contrast, the sole action authorized by the bankruptcy court in conjunction with the sale was the approval of a stipula-

tion between Brookfield and Chemical Bank, N.A., the secured creditor of Brookfield, whereby the bank agreed to waive its rights to all of the debtor's machinery, equipment, and inventory in return for Brookfield's prepetition accounts receivables. The effect of this stipulation was to provide "adequate protection" to Chemical pursuant to § 363(c), a result fully in keeping with the express terms of the *Braniff* decision. *See supra,* at 940, n. 2. *See generally* 5 *Collier on Bankruptcy* ¶ 17.02[2], at 1107–4, 5 & nn. 12, 15 (15th ed. 1983).

Kredietbank also cites *In re D.M. Christian & Co.,* 7 B.R. 561 (Bkrtcy.N.D.W.Va.1980) but that case, in holding that an all-asset sale need await a confirmed plan, did not discuss any potential resort of the debtor to § 363(b).

**7.** Under the Bankruptcy Act of 1898, reorganizations undertaken by a debtor-in-possession were governed by Chapter XI, 11 U.S.C. §§ 701 *et seq.* (1970), while those overseen by a trustee were conducted pursuant to Chapter X, 11 U.S.C. § 501 *et seq.* (1970). Sections 116(3) under Chapter X and 313(2) under Chapter XI, 11 U.S.C. §§ 516(3), 713(2), both provided that a sale of all the debtor's assets may be authorized upon "good cause shown."

F.2d 104 (7th Cir.1963), *cert. denied sub nom. Sportservice Corp. v. Northern Illinois Development Corp.,* 376 U.S. 938, 84 S.Ct. 792, 11 L.Ed.2d 658 (1964) (where risk of substantial diminution of assets' value, approval given); *In re Dania Corp.,* 400 F.2d 833 (5th Cir.1968), *cert. denied,* 393 U.S. 1118, 89 S.Ct. 994, 22 L.Ed.2d 122 (1969) (expressing more liberal view); *Marathon Foundry and Machine Co. v. Schwartz,* 228 F.2d 594 (7th Cir.1956) (same). *See generally Yacos,* Can a Chapter 11 Debtor-in-Possession Sell Substantially all its Physical Assets Without a Plan or Disclosure Statement, 1 Broken Bench Review, 1, 4 (Paine, November 1981) (characterizing the 5th, 7th, 9th and 2d Circuits as espousing a "liberal view" as to the availability of § 116(3) for an all-asset sale).

With regard to Bankruptcy Act Chapter XI reorganization proceedings, *In re Pure Penn Petroleum Co.,* 188 F.2d 851 (2d Cir. 1951), recognized the propriety of authorizing a sale of all of the debtors' assets pursuant to § 313(2) if the debtor met its burden of proving the existence of an emergency involving imminent danger of loss of the assets if they were not promptly sold. *Id.* at 854; *see also id.* at 855–56; *see also Penn-Central Merger & W. Inclusion Cases,* 389 U.S. 486, 528, 551–52, 88 S.Ct. 602, 623, 634–35, 19 L.Ed.2d 723 (1968) (Douglas, J. dissenting) (noting the ICC's position that valuation of properties and approval of their sale prior to approval of the plan for restructuring was permissible under Bankruptcy Act Chapter XI).

█ Thus, at the time of the drafting and adoption of the Bankruptcy Code, there was a significant, consistent body of case law supporting all-asset sales prior to the adoption of a reorganization plan by trustees in Chapter X and—although to a lesser extent—by debtors in Chapter XI proceedings, at least in the face of circumstances threatening diminution of value. Moreover, this case law was sufficiently significant to be called to Congress' attention by the National Commission on Bankruptcy Laws in its proposed bankruptcy reform statute. *See* Report of the Commission on Bankruptcy Laws of the United States, Part II, at 239, § 7–205 & n. *.[8] Our review of the Code, as well as the relevant legislative history, gives no indication that Congress sought to overrule these precedents. Indeed, Congress' emendation of the phrase "without cause shown" from §§ 116(3) and 313(2) in its adoption of Code § 363(6) argues in favor of applying such precedents as *In re Dania, supra,* and *Patent Cereals, supra,* that would afford liberal resort to § 363(b). In any event, we are inclined to agree with the court in *In re White Motor, supra,* that the slight legislative history that exists suggests that Congress intended at the very least to retain the judicially developed emergency doctrine under Bankruptcy Act §§ 116(3) and 313(2).[9]

---

**8.** In an attempt to obtain a statutory resolution of the conflict that had developed between cases such as *In re Solar Manufacturing,* on the one hand, and *In re Dania Corp.,* on the other, *see* discussion *ante,* at 983–84, the Commission on the Bankruptcy Laws of the United States drafted the following provision, introduced into the 94th Congress as H.R. 31 and S.236:

"Section 7–205. Sale or Lease of Property. If a lease or sale is not in the ordinary course of business pursuant to section 7–104, the administrator may authorize the sale or lease of property by the trustee or receiver, or by the debtor if there is no trustee or receiver, on such terms and conditions as the administrator may approve. A sale or lease of all or substantially all of the property of the estate may be authorized by the court if in the best interests of the estate after notice and hearing in accordance with Rules of Bankruptcy Procedure.

The accompanying note stated:

"If a debtor, trustee, or receiver believes that a sale or lease of all or substantially all of the property is desirable, such action must be authorized by the court on notice and hearing. There is a split of authority in the case law presently, with some courts allowing this type of sale, but others requiring some showing of emergency. This section makes it clear that a showing of emergency is not necessary."

**9.** After setting forth the provision proposed by the Commission on Bankruptcy Laws, see note 8 *supra,* the court in *In re White Motor* noted the objection to the provision raised by the Justice Department, which argued:

"Sale or lease of 'all or substantially all of the property of the estate' goes beyond the language of the statutes presently applicable. Sale of so much of the estate's property amounts to a liquidation which should be

■ To the extent that Kredietbank is contending that the sale should have been permitted only after conversion of the proceeding into a Chapter 7 liquidation proceeding, Kredietbank ignores authority to the contrary under the Code, *see In re Union County Wholesale Tobacco and Candy Co.*, 8 B.R. 439 (Bkrtcy.D.N.J.1981); *In re Alves Photo Service, Inc.*, 6 B.R. 690 (Bkrtcy.D.Mass.1980); *In re Sapolin Paints, Inc.*, 11 B.R. 930 (Bkrtcy.S.D.N.Y.1981); *In re Circus Time, Inc.*, 5 B.R. 1 (Bkrtcy.D.Me. 1971), as well as substantial precedent under the former Bankruptcy Act, *see* cases cited *ante* at pp. 983–84, that permits all-asset sales of a debtor in reorganization. To the extent that Kredietbank is arguing that the Bankruptcy Code allows a debtor-in-possession to liquidate under Chapter 11 but only pursuant to a reorganization plan, *see* Appellant's Brief at p. 31, Kredietbank's position is similarly unpersuasive. To accept Kredietbank's argument would be to distinguish under the Code between trustee-conducted reorganizations and debtor-conducted reorganizations and thereby re-inject into Code Chapter 11 distinctions Congress sought to eliminate by the consolidation of Chapters X and XI in Code Chapter 11. If a creditor or party in interest is of the view that a debtor-in-possession is improperly exercising the trustee's powers accorded it under 11 U.S.C. § 1107(a), of which 11 U.S.C. § 363(b) is but one, the proper course is to petition the bankruptcy judge for the appointment of a trustee or examiner under 11 U.S.C. § 1104(a), (b). We note, however, that no such petitions were presented to the court below, and that, in any event, the facts and circumstances of this case would not support a conclusion that either of such appointments was warranted here.

Regarding Kredietbank's claim that the pre-plan sale deprived Kredietbank of the procedural safeguards of a disclosure statement and hearing, we find significant the absence of any specific prejudice which Kredietbank attributes to such deprivation. The concept of "adequate information", as embodied in 11 U.S.C. § 1125, is a flexible one, as is the question whether valuation of the debtor's assets is in order. *See* H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 226–227 (1977), U.S.Code Cong. & Admin.News 1978, 6185–6186 ("this standard . . . is flexible on a case-by-case basis . . . . For example, trade creditors will not need the same level of disclosure as public debenture holders or stockholders, and the section reflects the desired flexibility."). The interests protected by § 1125 appear to have been substantially accommodated by the bankruptcy judge in the course of the proceedings below. As a related matter, we recognize that there may be instances where the proposed sale of the debtor's assets would be inappropriate despite the authority of §§ 363(b) and 1123(b)(4). Such instances might include a debtor's obtaining some consideration for the sale not subject to its creditors' claims, or insufficient advertising of assets so as to deny the court the means by which to determine the reasonableness of the price or to deny creditors the highest

handled under [liquidation] and not in the context of an arrangement or reorganization. Only in an unusual emergency should such an extensive sale or lease of property be authorized without formal transfer of the case to a liquidation proceeding."
Reproduced in Hearings on H.R. 31 and H.R. 32 Before the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary, 94th Cong., 1st & 2d Sess., pt. 4 at 2123 (1975–76). Committee on the Judiciary, 94th Cong., 1st & 2d Sess., pt. 4 at 2123 (1975–76).
The version ultimately adopted by Congress appears *ante* at page 982. Apparently, no congressional statement as to the relative merits of the positions of the Justice Department and the Commission is contained in the legislative history. Appellant argues that Congress' failure to enact the Commission's draft section is evidence of a wholesale rejection by Congress of a sale of substantially all the assets of a debtor outside the context of a liquidation or reorganization plan, even in an emergency situation. In view, however, of the substantial hearings held before congressional committees on the bankruptcy laws, as well as the substantial rewriting undertaken by such committees in the drafting of H.R. 8200, 95th Cong., 1st Sess.—the bill ultimately enacted as the Bankruptcy Code, and in light of the particularized objections of the Department of Justice to the Commission's draft, we find the deletion of the second sentence of § 7–205 indicative, at most, of a rejection of the particular statutory resolution propounded by the Commission.

price obtainable. Suffice it to say, however, that such circumstances do not present themselves here.

■ Having scrutinized the record compiled below, we are of the view that Brookfield bore its burden of showing the existence of an emergency situation warranting the bankruptcy court's authorization of sale. The undisputed testimony and representations at the November 15th hearing established that all operations had completely ceased and that the $225,000 necessary to resume operations was unavailable to Brookfield from any source.[10] The stoppage of operations substantially diminished the likelihood of realizing on Brookfield's receivables and was especially threatening to Brookfield in light of the nature of its inventory: "men's suits ... already manufactured [and] an enormous quantity of inventory which is either in the cut or raw stage." AM. Tr. at 42. As purchaser's counsel stated to the bankruptcy court, "the result of resuming operations will be that shipments will proceed, cutting will continue, manufacturing of garments will continue, and the damage that has already occurred may be lessened somewhat by the fact that we can still complete some manufacturing on the inventory that remains. That is why we want to move very quickly, Your Honor." AM. Tr. at 46. Thus, Kredietbank's claim notwithstanding, the instant case is not one in which the asserted exigency is nothing more than a deadline imposed by the purchaser for the acceptance of an apparently generous offer. *Compare In re Solar Mfg., Inc., supra,* with *In re Loewer's Gambrinus, supra.* Nor is this an instance in which the debtor attempted any manipulation of the parties or evaded requirements for plan filings imposed upon it by the Court. Compare in this regard, *In re D.M. Christian & Co., supra.*

Simply put, the wasting asset in this instance may be characterized as the "going concern" value of the fully stopped business. The absence of any means on the part of the debtor to return the business to

operation, the need to sell the business as an ongoing entity, the lack of interest by any prospective purchaser other than Zion, as well as all the facts and circumstances of this case warrant the conclusion that Brookfield's sale was authorized under sufficiently exigent circumstances, that the sale was in the best interests of the estate, and that the price was fair and reasonable.

In sum, we conclude that an "emergency sale" of substantially all of the assets of a debtor-in-possession is permitted under § 363(b) and that Brookfield met its burden of showing sufficiently exigent circumstances to warrant the immediate sale to Zion.

The Order of Bankruptcy Judge Abram, dated November 15, 1982, is *affirmed.*

SO ORDERED.

---

**10.** We note in this regard that no representation of counsel for either Brookfield or the Creditors' Committee nor any factual evidence placed before the Court by Brookfield's principal were contested by appellant or by any party appearing before the bankruptcy judge.