**In re BROOKFIELD CLOTHES, INC., Debtor.**

**OLD STONE BANK, Plaintiff,**

v.

**JASON GIBBS, INC. and Brookfield Clothes, Inc., Defendants.**

Bankruptcy No. 82 B 11741 PA.
Adv. No. 83–5951A.

United States Bankruptcy Court, S.D. New York.

April 30, 1986.

Kreindler & Relkin, P.C., New York City, for Old Stone Bank.

Tenzer, Greenblatt, Fallon & Kaplan, New York City, for Jason Gibbs, Inc.

Angel & Frankel, P.C., New York City, for Brookfield Clothes, Inc.

### MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PRUDENCE B. ABRAM, Bankruptcy Judge.

Presently before this court for resolution is a motion for summary judgment made by Old Stone Bank (the "Bank"), the plaintiff in this adversary proceeding. On September 19, 1983, the Bank commenced this adversary proceeding against Brookfield Clothes, Inc. ("Brookfield"), the Chapter 11 Debtor, and Jason Gibbs, Inc. ("Gibbs"), the purchaser of Brookfield's assets pursu-

ant to a transaction approved by this court by order dated November 15, 1982 (the "Sale Order"). The Bank asserts that it has a security interest in a lease for a certain "Markamatic 3200 System" (the "Equipment"), that the Equipment was transferred by Brookfield to Gibbs under the Sale Order and that the Bank has not received any payments subsequent to the transfer. The lease, which is dated March 20, 1981 (the "Lease"), was for a term of 60 months and required base rental payments in the total sum of $147,900, plus applicable taxes, to be paid in 60 consecutive monthly installments of $2,465, plus a rent supplement to be computed and paid on the basis of the prime lending rate of the Bank.

The complaint sets forth four causes of action. The first count alleges that the Bank is entitled to recovery of the Equipment because of defaults under the Lease and that the Bank's rights are superior to those of both Brookfield and Gibbs. Count two seeks the reasonable value of the use of the Equipment in an amount at least equal to the Lease rentals. Count three alleges that Brookfield, despite knowledge of the Bank's interest in the Equipment deliberately failed to give notice to the Bank of the hearing leading to the Sale Order and that Gibbs should have known of the Bank's security interest at the time it purchased the Equipment and also failed to give notice. The Bank asserts that it was damaged by the failure of notice in that it expended attorneys' fees, was deprived of its right to be heard at the sale hearing and seek to protect its rights, deprived of the use or value of the Equipment and otherwise damaged. The fourth count alleges that Brookfield and Gibbs are liable for the conversion of the Equipment.

In its answer to the complaint, Brookfield admitted to the existence of the Lease and denied a deliberate failure to give notice to the Bank of the sale hearing. As a first defense, Brookfield urged that the complaint failed to state a claim upon which relief can be granted. As a second defense, Brookfield asserted that the Equipment was among the assets sold to Gibbs, subject to all legal and valid liens but that the alleged lien of the Bank was not a legal and valid existing lien. As a third defense, Brookfield asserted that notice of the hearing was given in accordance with the court's order to show cause fixing the sale hearing.

In its original answer to the complaint, Gibbs denied most of the allegations of the complaint except that it admitted that Brookfield sold certain machinery and equipment to it, subject to existing lawful liens, if any, and admitted refusal to make any payment to the Bank. As affirmative defenses, Gibbs asserted that the complaint failed to state a cause of action against it, that the Bank's alleged lien did not constitute an existing lawful lien, that the court approved the method of service of notice relative to the hearing and that Brookfield was the owner in fee simple of the Equipment having paid the seller for it. Gibbs further asserted that the lessor, Todd Leasing Corporation ("Todd"), had never possessed any right, title or interest in the Equipment and had perpetrated a series of fraudulent transactions, surrounding and including the Lease, that the Bank knew or should have known that the transactions were part of an fraudulent scheme by Todd and that by virtue of its knowledge and participation in the fraudulent scheme, the Bank was estopped from asserting the action. Discovery was undertaken by Gibbs' then counsel which was particularly directed at this last defense.

Subsequently, Gibbs retained new counsel and filed a first amended answer. In its first amended answer, Gibbs tendered the Equipment to the Bank on an "as is" and "where is" basis. Gibbs withdrew the allegation that Brookfield owned legal and equitable title to the Equipment at the time of the Sale Order. In addition, Gibbs withdrew its fifth defense, which had asserted that the lease was part of a fraudulent scheme in which the Bank had participated. Gibbs asserted a cross-claim against Brookfield based on an alleged misrepresentation in the sale agreement that Brookfield was the owner of the Equipment and had full

right and authority to sell it. Four other cross-claims also sought relief against Brookfield on varying theories, including rescission, breach of warranty, liability as an active tortfeasor if conversion was found, and unjust enrichment of Brookfield if Gibbs were liable to the Bank.

The Bank's motion for summary judgment is based on the affidavit of a senior vice president of the Bank. Annexed to the affidavit as exhibits are copies of U.C.C. filings against Brookfield and Todd relative to the Equipment.[1] No objection has been raised to the U.C.C. filings. Inasmuch as Gibbs has expressly withdrawn its defense that the Bank did not have a valid lien and Brookfield has implicitly done so by not raising the issue in its brief response to the summary judgment motion, the court finds that the Bank is the holder of a valid, duly perfected security interest in the Equipment.[2]

The Bank's right to possession of the Equipment, the subject of the first count, is no longer in issue as by order dated December 27, 1985, the motion for summary judgment was granted on consent to the extent of granting the Bank possession of the Equipment and authorizing the Bank to sell the Equipment. What remains in issue is the Bank's request for monetary relief.

The background to the Sale Order is fully detailed in the District Court's decision affirming the order, from which an appeal was taken by another equipment lessor, and need be restated here only briefly. See *In re Brookfield Clothes, Inc.*, 31 B.R. 978 (S.D.N.Y.1983). The Sale Order was the outcome of the emergency situation created shortly after this case was initiated by the filing of an involuntary petition against Brookfield when Brookfield's workers went on strike and Brookfield, having insufficient funds to resolve the strike issues or continue its operations,

closed down its operations. As was well-known at the time, creditor confidence in Brookfield had been badly shaken by the then recent decision in *In re Braten Apparel Corp.*, 21 B.R. 239 (Bankr.S.D.N.Y. 1982), *aff'd*, 26 B.R. 1009 (S.D.N.Y.1982), which revoked the confirmed plan of arrangement of Braten Apparel Corporation for that entity's failure to disclose its ownership of Brookfield.

The language of the Sale Order is admittedly unusual to the extent pertinent to the present dispute. The relevant ordering paragraph reads:

"ORDERED, that the sale of the Debtor's assets pursuant to the terms of the Agreement be free and clear of all liens and encumbrances except as set forth in the Agreement on the record, be and the same hereby is, authorized and approved
* * * "

Normally, a sale order states either that the sale is free and clear of liens and liens attach to the proceeds or that the sale is subject to liens. See Bankruptcy Code § 363(c)-(f). The Sale Order does not provide that liens are to attach to the proceeds of sale, i.e., the funds to be received by Brookfield.

The Assets Purchase Agreement approved by the Sale Order provided at Paragraph 1.01 as follows:

"Subject to the terms and conditions of this Agreement, Brookfield agrees that on the closing date it will convey, transfer, assign and deliver 'as is, where is', to Buyer, without recourse and Buyer agrees to acquire and accept all right, title and interest of Brookfield in the following assets:

1. All machinery and equipment as per Schedule annexed hereto (to be purchased subject to existing liens without recourse against the Buyer

---

1. In addition, there is a copy of an instrument conveying the Equipment from Brookfield to Todd as well as of a check from the Bank to Brookfield in the amount of $145,000.

2. This court finds the net result of the transactions among Brookfield, Todd and the Bank was the creation of a security interest in the Equip-

ment running, ultimately, in favor of the Bank. The structuring of the rental payments and the original cost of the Equipment make it clear that the transactions were a financing device, and not a true lease, notwithstanding the absence of a purchase option.

and its present and future assets except with respect to the specific machinery and equipment as to which lawful liens may exist as set forth on the Schedule annexed hereto).

\*　　\*　　\*　　\*　　\*　　\*

6. One-half of all claims and rights of action against the officers, shareholders, directors and affiliated companies of Brookfield including actions resulting from intercompany transfers. \* \* "

Of major concern in connection with the Asset Purchase Agreement was the assertions of Kredietbank, N.V. that it held a senior lien on much, if not all, of the extensive equipment being transferred to Gibbs by Brookfield, which it had used in its business as a men's clothing manufacturer. Kredietbank also asserted that Brookfield did not even own the Equipment. Rather than seek to have the court resolve this possibly complex dispute, Brookfield chose to sell subject to the dispute with the burden on Gibbs to resolve the problem, presumably by making a monetary settlement.

The Bank admits that as early as December 21, 1982 it knew that Gibbs had purchased Brookfield's assets, at which time it forwarded the pertinent documents to Gibbs. By letter dated March 21, 1983, the Bank threatened Gibbs with immediate legal action if it did not immediately return the Equipment. Although the Kredietbank appeal was then pending and was not resolved until June 21, 1983, the Bank took no action in the bankruptcy court relative to the Sale Order or in the district court to participate in the pending appeal from the order. The Bank did not commence this adversary proceeding until September 19, 1983, at which time the Sale Order had become final. The Bank has failed to show its failure to receive prior notice of the Sale hearing was more than inadvertance. The court approved the form of notice. At this juncture, it does not appear that if the Bank had appeared that the Sale Order would have been any different because the issues respecting the Bank are but a variant of those relative to Kredietbank, which did appear and actively participate.

Under the terms of the Sale Order and the agreement it approved, the Bank is entitled to look to Gibbs for payment of the monies due from and after the sale. The Sale Order effectively insulates the proceeds in Brookfield's hands, except for the pre-sale amounts for which Brookfield admits it is liable. The court reserves for a future day the resolution of the cross-claims made by Gibbs against Brookfield.

The motion for summary judgment of the Bank is granted to the extent of granting judgment for the Bank against Gibbs in the amount of the base rent, additional rents, late charges, all from the date of sale, and reasonable attorney's fees, less the amount received on resale of the Equipment and the pre-sale amounts due from Brookfield. The motion to the extent it requests judgment against Brookfield is denied except to the extent that judgment may be had against Brookfield for the pre-sale payments. The Bank is directed to settle appropriate judgments along with supporting affidavits supporting the computation of the amounts on not less than 10 days' notice to all parties.

It is so ordered.

